UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 09-30026-RAL |
| Plaintiff, | * | |
| | * | OPINION AND ORDER ADOPTING |
| -vs- | * | REPORT AND RECOMMENDATION |
| | * | AND DENYING MOTION TO SUPPRESS |
| PHILLIP C. RUNNING, | * | |
| Defendant. | * | |

## I. INTRODUCTION

Defendant moves (Doc. 15) to suppress statements he allegedly made to FBI Special Agents Oscar A. Ramirez ("Ramirez") and Rosebud Sioux Tribe Special Agent Ken Fisher ("Fisher") during questioning on October 6, 2008, and to Ramirez and FBI Special Agent Mark Betten ("Betten") on February 11, 2009. Defendant argues that the statements were made involuntarily and during interrogations violative of the Fifth Amendment to the United States Constitution and Miranda v. Arizona, 384 U.S. 436 (1966).

The matter is before the Court on the Recommendation of United States Magistrate Judge Mark A. Moreno. (Doc. 44). The Magistrate Judge conducted a hearing on Defendant's motion on October 29, 2009 (Doc. 41) and recommended on November 13, 2009, that the Defendant's motion to suppress be denied in all respects. The Defendant has asserted numerous objections to the Magistrate Judge's recommendation to deny his motion to suppress the statements.

1

## II. STANDARD OF REVIEW

In considering a magistrate judge's recommendation on a dispositive matter, such as a motion to suppress evidence, a district court must make a "de novo determination of those portions of the report or . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A *de novo* review requires a district court to make its own determination of disputed issues. See United States v. Portmann, 207 F.3d 1032, 1033 (8th Cir. 2000).

The Defendant objects to the factual findings of the Magistrate Judge. When a defendant objects to the factual findings of a magistrate judge, the district judge must make its own *de novo* determination of the facts with no deference to the magistrate judge's findings. See 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 72(b). In order to make a proper *de novo* review of a magistrate judge's report of factual findings, the district judge must make an independent review of the record, including tapes of evidence and the transcript of evidentiary hearings before the magistrate judge. See Portmann, 207 F.3d at 1033. The Court has conducted a *de novo* review of the record, including the transcripts of the evidentiary hearing on Defendant's motion to suppress the statement. (Doc. 41).

In an effort to argue that his statements were involuntary and he was subjected to custodial interrogation without being advised of his Miranda rights, the Defendant objects at length to the Magistrate Judge's factual findings for failing to include certain information concerning the questioning on October 6, 2008, and February 11, 2009. Based on this Court's *de novo* review of the record and the recommendation, the Court has concluded that the recommendation is the proper application of the law to the facts.

## III. FACTS

On March 18, 2009, Defendant was charged with aggravated sexual abuse with a child who had not attained the age of twelve years, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D). The indictment alleges that Defendant engaged in the intentional touching, not through the clothing, of the genitalia of E.N. on or about April 17, 2008. (Doc. 1).

## A. October 6, 2008 Statements

On October 6, 2008, as part of an ongoing investigation into allegations of child sexual abuse on the Rosebud Indian Reservation, Defendant, a suspect in the investigation, was asked to speak with Special Agents Ramirez and Fisher at the FBI office in Sioux Falls, South Dakota. Defendant agreed to speak with the agents. (T. 86).[1] In order to accommodate Defendant's work schedule, the interview was scheduled in the evening. (T. 109).

After the agents obtained customary biographical information from Defendant, including Defendant's date of birth, Social Security number, and current address, Defendant was given his Griffin warnings.[2] Defendant was instructed that the interview was voluntary and he could leave or ask either Ramirez or Fisher to stop the interview at any time. (T. 90-91). He was also shown that the door leading to the outside was unlocked, that he had access to the outside the same way he came in, and he was told that he could leave or ask the interviewing agents to stop the interview at any time. (T. 91). Defendant denied being under the influence of any illegal drug,

---

[1] Any references to the transcript will be "T" followed by the page number or numbers.

[2] Agent Ramirez told Defendant "that he was not under arrest, was not going to be arrested immediately following the interview and that that decision could only be made by the United States Attorney's Office in the future. I told him that the door to the interview room was open. I physically got up, opened it and showed him that it was open and I told him that he had access to the outside just the same way he came in. I told him that he could leave or ask the interviewing agents to leave at any time and that he could stop or ask the interviewing agents to stop at any time." (T. 90-91).

3

alcohol, or any type of medication or having any physical or mental problems. (T. 94). Defendant indicated that he was capable of being interviewed. He also advised the agents that he had completed high school, studied criminal justice at Dakota Western College, and was a combat engineer in the United States Marine Corps. (T. 95-96).

During the interview, Defendant initially equivocated regarding whether he knew the alleged victim or was ever in her home. (T. 98-99). When advised that witnesses observed him in the house with the alleged victim, Defendant admitted to being in the house and playing with her. (T. 101); Ex. 3.

Defendant asked the agents what would happen if he admitted to something. (T. 100). In response, Ramirez replied that he and Fisher were not allowed to give any advice, including legal advice, on what the United States Attorney's Office would do with whatever information Defendant provided. (T. 100-01). The agents reminded Defendant that no promises could be made about what would happen to him and that the case was still being investigated. (T. 100).

Toward the end of the interview, Defendant said that he was willing to take a polygraph examination. Ex. 4. Moments later, the interview concluded and Ramirez escorted Defendant out of the building. (T. 107). The interview lasted a total of approximately two hours. (T. 91). Throughout the interview, the agents never raised their voices or yelled at Defendant. (T. 102).

### B. February 11, 2009 Statements

On February 11, 2009, Defendant met with Ramirez at the FBI office in Sioux Falls and rode in a car with Ramirez to the Minnehaha County Law Enforcement Center to meet with FBI agent Mark Betten. In order to accommodate Defendant's work schedule, the interview was scheduled in the evening. (T. 31). Upon arrival, Defendant was advised of his rights relating to

the voluntary administration of a polygraph examination and consented to the same by executing a written consent form. (T. 11, 15-16); Ex. 1. Defendant was advised of his Miranda rights through a standard FBI advice of rights form and signed the form indicating that he understood his rights and was willing to answer questions without a lawyer present. (T. 11, 19); Ex. 2. Both forms were read aloud while Defendant followed along. (T. 17, 19). Defendant also was informed of the subject mater of the investigation and polygraph examination. (T. 12).

After administration of the examination, Defendant was told that the test results indicated deception. (T. 26). Agent Betten stated he believed Defendant had placed something, likely his finger, in complainant's vagina. (T. 26-27). In response, Defendant asked whether he was done with the test and the components could be removed. (T. 27). Betten replied that there would be no further testing and assisted Defendant in removing the components. (T. 27). After removal of the components, Defendant remained in his chair and listened to Betten for approximately another five minutes. (T. 28).

Defendant then asked whether he could leave, and Betten responded that the interview was a voluntary process, Defendant was free to leave at any time, he was not under arrest, he would not be arrested regardless of what he told Betten during the interview, and that he did not have to say anything. (T. 27-28). Defendant then remained seated while Betten continued to talk and ask questions.

After further inquiry, Defendant asked whether he could leave. (T. 29). Again, Defendant was told he could leave at any time. (T. 30). Defendant then asked which way he needed to go to leave. (T. 30). Agent Betten interpreted this question as a request to leave and summoned Ramirez, who escorted Defendant out of the meeting. (T. 30). In total, the entire

meeting between Defendant, Betten, and Ramirez lasted approximately one hour to one hour and ten minutes. (T. 28).

### III. DISCUSSION

The Defendant objects to the findings of the Magistrate Judge that the Government has sustained its burden of proof that: (1) <u>Miranda</u> warnings were not required prior to, or at any time during, Defendant's October 6, 2008 meeting with Ramirez and Fisher; and (2) Defendant waived his <u>Miranda</u> rights with respect to statements to Betten on February 11, 2009, and such statements were voluntary under the Fifth Amendment.

### A. <u>Miranda</u> Violation Claim

The Fifth Amendment to the United States Constitution affords criminal suspects the rights to be free from compulsory self-incrimination. Criminal suspects must have knowledge of their Fifth Amendment rights "before they can either intelligently exercise or waive these important privileges." <u>United States v. Griffin</u>, 922 F.2d 1343, 1356 (8th Cir. 1990). The United States Supreme Court held in <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that any time a person is taken into custody for questioning they must be advised of their Fifth Amendment rights in order "to counteract the 'inherently compelling pressures' of custodial interrogation." <u>Arizona v. Roberson</u>, 486 U.S. 675, 681, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704 (1988). <u>Miranda</u> "requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." <u>Griffin</u>, 922 F.2d at 1347. There is no dispute here that Ramirez did not issue the standard <u>Miranda</u> warnings before the October 6, 2008 meeting.

"Interrogation" is "the direct questioning [by a law enforcement officer] or any practice

6

reasonably likely to evoke an incriminating response from a suspect." Griffin, 922 F.2d at 1347 (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980)). The interview on October 6, 2008, was, without question, an interrogation within the meaning of Miranda.

"Custody" for the purposes of a Miranda analysis "occurs either upon formal arrest or under *any other circumstances* where the suspect is deprived of [her] freedom of action in *any* significant way." Griffin, 922 F.2d at 1347.

The Court must consider whether a reasonable person in defendant's position would have believed that his freedom of movement was limited by law enforcement officers to a degree associated with formal arrest. United States v. Bordeaux, 400 F.3d 548, 559-60 (8th Cir. 2005). The relevant inquiry is how a reasonable person would have understood her situation. United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004). "In making that evaluation, we consider the totality of the circumstances that confronted the defendant at the time of questioning." Id.

The Eighth Circuit set forth in Griffin several common "indicia of custody" considerations relating to "police practices employed during questioning which tend to either mitigate or aggravate an atmosphere of custodial interrogation." Griffin, 922 F.2d at 1349. Those factors are:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was
7

police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Griffin, 922 F.2d at 1349.

The Griffin indicia factors, while instructive, are not dispositive or exhaustive. Bordeaux, 400 F.3d at 560. They are merely one means of analyzing whether the defendant had a reasonable subjective belief that her "freedom of action [was] curtailed to a degree associated with formal arrest" and "whether that belief [was] objectively reasonable under the circumstances." Griffin, 922 F.2d at 1349. The Eighth Circuit held in Griffin that "[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." Griffin, 922 F.2d at 1349. The FBI routinely informs suspects of their "Griffin rights" as a matter of course.

Application of the Griffin factors demonstrates that the agents' encounter with the Defendant on October 6, 2008 was not a custodial situation. Defendant accepted an invitation to voluntarily speak with Ramirez and Fisher and was informed at the beginning of the interview that his participation was voluntary, that he was free to leave upon request, and that he was not under arrest. T. at 90-91. "That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004). Ramirez demonstrated to Defendant that one exit to the interrogation room was unlocked and available to him, which confirmed Defendant's unrestrained freedom of movement during the questioning. Id. Moreover, as Defendant admits in his objections, he was never handcuffed or

physically restrained. (Doc. 47). The fact that one of the two exits to the interview room was not explicitly made available to the Defendant does not change the non-custodial nature of the interview.

The duration of the interview was fairly long, lasting approximately two hours, but still was substantially shorter than the durations addressed in Simmons and Hyles. Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001), cert. denied, 534 U.S. 924 (2001) ("[q]uestioning a suspect for six or seven hours is not unconstitutionally coercive per se." Simmons, 235 F.3d at 1133; United States v. Hyles, 479 F.3d 958, 967 (8th Cir. 2007) (agreeing that a period of questioning spanning five or six hours was not excessive or burdensome)). At the conclusion of the interview, Defendant was not arrested. Rather, he voluntarily agreed to take a polygraph examination, which was ultimately scheduled more than four months later. During the interim period, Defendant was not arrested. Because the interrogation was not custodial, there was no requirement that Defendant be advised of his Miranda rights.

The Magistrate Judge found that Ramirez's testimony was credible, a conclusion to which the Defendant objects. This Court is entitled to "give weight to the magistrate judge's credibility determination." United States v. Martinez-Amaya, 67 F.3d 678, 681 (8th Cir. 1995). This Court, however, has conducted a *de novo* review of the record and has made the same credibility finding. Czichray held that repeatedly giving the Griffin advice of rights amounts to a "weighty inference that [defendant] was not in custody." Czichray 378 F.3d at 826.

Taking into account the totality of the circumstances, a reasonable person in the Defendant's position would not have understood that he was in custody at any time. The agents, under the circumstances, were not required to warn the defendant of his Fifth Amendment

9

privilege against self-incrimination and the right to the assistance of counsel as required by Miranda prior to talking with the defendant on October 6, 2008. Defendant was given Miranda warnings in advance of the questioning on February 11, 2009. Thus, no Miranda violation occurred here.

**B. Lack of Voluntariness Claim**

Defendant also contends that his October 6, 2008 and February 11, 2009 statements were involuntary and that admission of them would violate his Fifth Amendment rights. The Fifth Amendment prohibits authorities from compelling a person to give an incriminating statement. Therefore, the Government must prove by a preponderance of the evidence that the Defendant's statements to police were voluntary. United States v. Astello, 241 F.3d 965 (8th Cir. 2001); United States v. Lebrun 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (quoting Simmons, 235 F.3d at 1132)). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Lebrun, 363 F.3d at 724 (quoting Simmons v. Bowersox, 235 F.3d at 1132.)

The Eighth Circuit has described the voluntariness inquiry as the "overborne will" doctrine. United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989); see also LeBrun, 363 F.3d at 725 ("our polestar always must be to determine whether or not the authorities overbore the defendant's will"); Bordeaux, 400 F.3d at 560 ("A statement is involuntary if it was extracted by use of physical and or psychological pressure that overbore a defendant's will."). A statement is not involuntary "unless it is established that law enforcement officials engaged in coercive activity." Bordeaux 400 F.3d at 560.

In determining voluntariness, the Court examines the totality of the circumstances.

10

Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001). In applying the totality-of-the-circumstances analysis, the Court focuses on the conduct of the agents and a defendant's capacity to resist pressure to confess considering the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. See Lebrun, 363 F.3d at 726.

Factors the Court may weigh in determining voluntariness of a statement include the prolonged nature of the questioning, Lebrun, 534 U.S. at 726; the defendant's subjective understanding of his Miranda rights, Simmons, 235 F.3d at 1133-34; the age of the defendant, his lack of education, or his low intelligence, United States v. Gallardo-Marquez, 25 F.3d 1121, 1123-24 (8th Cir. 2001); the defendant's prior contact with law enforcement, Id. at 1124; and use of physical punishment such as deprivation of food or sleep. Hall v. Wolff, 539 F.2d 1146, 1150-51 (8th Cir. 1976).

The Court has conducted a *de novo* review of the record, as required by 28 U.S.C. § 636(b)(1). Throughout the analysis, the Court evaluated whether the facts surrounding the interviews demonstrate that the conduct of the agents overbore the Defendant's will and capacity for self-determination. Considering all of the factors, the Court cannot find that the officers overbore the Defendant's will and capacity for self-determination, and for the following reasons, finds that the Defendant's statements were voluntary.

### 1. October 6, 2008 Statements

With respect to Defendant's October 6, 2008 statements, there is no requisite coercive or overreaching conduct sufficient to render Defendant's statements involuntary. The Court has considered the questioning tactics and other details of the interview in applying the totality-of-the-circumstances test for voluntariness. Ramirez testified that the agents did not even raise their

11

voices at Defendant, much less subject him to any physical punishment. Nor did they make any threats or promises or exert any undue influence on him.

The Court has considered the duration of the questioning and detention. An examination of the transcript of the motions hearing convinced the Court that the Defendant was examined and interviewed over a period spanning approximately two hours for the October 6, 2008 interview. T. at 91. Nothing about this length suggests unconstitutionally coercive conduct, especially upon considering authority that "[q]uestioning a suspect for six or seven hours is not unconstitutionally coercive per se." Simmons, 235 F.3d at 1133; see also Hyles, 479 F.3d at 967 (8th Cir. 2007) (agreeing that a period of questioning spanning five or six hours was not excessive or burdensome); United States v. Scares the Hawk, No. CR. 09-30019 (D.S.D. Dec. 2, 2009) (finding that interviewing over a seven-hour span did not render confession involuntary).

In its determination of voluntariness, a court must also investigate and analyze the characteristics of the accused. See Tippitt v. Lockhart, 859 F.2d 595, 597; United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998). In an effort to determine the defendant's ability to resist pressure, courts take into account the person's age, years of formal education, intelligence level, and prior experience with law enforcement. See Wilson v. Lawrence County, 260 F.3d 946, 952 (8th Cir. 2001) (noting that "one of the key concerns in judging whether confessions were involuntary . . . [i]s the intelligence, mental state, or any other factors possessed by the defendant that might make him particularly suggestible").

Here, Defendant's responses to questions posed to him were logical and understandable. Nothing in the record suggested him to be under the influence of alcohol or drugs or to have any mental or physical problems.

12

Defendant's education and work experience weigh in favor of voluntariness and against any particular risk of suggestibility to pressure. At the time of the interviews, Defendant was 21 years old, had a high school diploma, had studied criminal justice at Dakota Western College, and was a combat engineer in the United States Marine Corps. Such education exceeds that of the defendant in Astello, in which the Eighth Circuit has found that an 18-year-old defendant's confession was voluntary where he had completed the 11th grade and was able to understand what was said throughout the interview. 241 F.3d at 968.

Based on the totality of the circumstances exhibited in the entirety of the record as it now exists, Defendant's capacity for self-determination was not impaired and the agents did not take any action that could rise to the level of overbearing Defendant's will. Consequently, the Government has established by a preponderance of the evidence that Defendant's October 6, 2008 statements satisfy the voluntariness requirement of the Fifth Amendment.

### 2. February 11, 2009 Statements

Defendant claims that his statements to Betten on February 11, 2009 were involuntary. Although Defendant admits to receiving proper Miranda warnings prior to administration of the polygraph examination on February 11, 2009, he maintains that he should have received renewed Miranda warnings prior to the post-test interrogation. According to Defendant, statements made after the conclusion of the polygraph examination should be suppressed. However, the fact that he did not receive renewed Miranda warnings does not render Defendant's statements involuntary if the circumstances present *in toto* indicate otherwise. See Wyrick v. Fields, 459 U.S. 42, 47-49 (1982), on remand, 706 F.2d 879, 880-82 (8th Cir. 1983), cert. denied, 464 U.S. 1020 (1983). As in Wyrick, "by requesting a polygraph examination, he initiated interrogation." Id. at 47.

13

Moreover, throughout the interrogation, Defendant was repeatedly and fully informed of his right to stop answering questions at any time. Defendant had expressly waived those rights prior to the interrogation. Defendant ultimately exercised those rights to stop the interrogation. Under these particular facts and circumstances, the Court concludes that petitioner voluntarily, intelligently, knowingly, and intentionally relinquished his Miranda rights in connection with the February 11, 2009 interrogation.

The totality of the circumstances also demonstrate that Defendant's statements were not involuntary. Although he asked twice during the interview whether he was free to leave, Defendant continued to sit in his chair and provided no indication that he no longer wanted to listen or talk to Betten or that he wanted to walk out of the room. Significantly, Defendant never admitted to touching E.N.'s vagina in an inappropriate or sexual way. Nor did he explain why the incident with E.N. occurred, despite Betten's efforts to elicit such information. This lack of any affirmative admissions by Defendant of sexual contact with E.N. is certainly indicative of someone whose faculties and judgment were not impaired or overborne by an interrogating agent.

Thus, Defendant was advised of his Miranda rights and his statements were voluntary. He was informed repeatedly that he was not under arrest, that he would not be arrested, that he could leave at any time, and that he was not required to say anything. The duration of the interview and examination was not excessive, approximately one hour and ten minutes, and the tone of it was by no means hostile or coercive. As discussed earlier, Defendant's general intelligence and education, the fact that he was not intoxicated or under the influence of alcohol or drugs, the fact that he possessed knowledge of the legal system through college coursework in criminal justice, and that he was permitted to leave and escorted out of the building when

14

articulating that he wanted to depart and end the interview all militate against a finding of involuntariness.

## C. Waiver of Miranda Rights As Evidence of Voluntariness

The Eighth Circuit courts have placed significant weight on the fact that a Defendant had a subjective understanding of his Miranda rights at the time of the interview. See Lebrun, 363 F.3d at 726; Simmons, 235 F.3d at 1132-34. As discussed above, the Defendant was advised of his rights to have a lawyer present and expressly waived them prior to taking a polygraph examination on February 11, 2009.

The Defendant objects to the magistrate judge's reliance on the waiver of rights and consent to polygraph as evidence of voluntariness. Although the Defendant said that he understood his rights *prior* to taking the polygraph exam, Defendant argues that because he was not reminded of his rights *after* the polygraph exam, the initial waiving of his rights does not show that his statement was voluntary. In a situation where a significant amount of time has elapsed between the initial waiving of the rights and the summary statement, the Eighth Circuit has focused on the fact that the interviewee did not assert the rights after he initially waived them. See Simmons, 235 F.3d at 1133 (finding that a statement was voluntary where the statement came two hours after commencement of questioning and the 17-year-old defendant did not assert them later in his videotaped statement to police). Here, Defendant did not assert his rights to terminate the post-polygraph interview. Rather, he asked if he was free to leave, and in response Agent Betten advised Defendant again of his right to stop talking at any time. Because he did not assert these rights prior to making the statements at issue, the waiver of rights at the beginning is an indication of voluntariness.

The Court, in conducting its *de novo* review of the record, has considered all the facts cited by Defendant in his objections to the Magistrate Judge's Report and Recommendation, including the testimony that the agent was taller, heavier, and more educated than Running; that Betten did not counsel Defendant that he could be arrested on a future date; and that Betten mentioned that it would be dishonorable for a Native American and Marine to make a young girl subject herself to the ordeal of court proceedings. Nevertheless, the totality of these circumstances do not reach the level of coercive activity that would overbear the Defendant's will and self-determination. See Simmons, 235 F.3d at 1132-33 (where three officers interrogated a 17-year-old habeas petitioner with below average intelligence for over two hours, raising their voices in close proximity, making misrepresentations, and "telling him things would go better for him if he told the truth," court found that habeas petitioner did not prove that his will was overborne by police); Jenner, 982 F.2d at 334 (where officers interviewed habeas petitioner for six to seven hours, used questioning techniques that referenced a "bad Debbie" who was responsible, raised their voices, and accused defendant of not being honest, the court found that habeas petitioner did not prove that her will was overborne by police).

The Court has determined the voluntariness based upon an assessment of all of the circumstances and factors surrounding the statement. Considering these factors, the Court cannot find that Defendant's will was overborne by police tactics. The agents' testimony, along with Defendant's written acknowledgment that his rights had been read to him and he understood his rights but chose not to exercise them is particularly compelling. Betten testified that Defendant was read his Miranda rights, as well as the right to stop questioning, before the polygraph examination. "Cases in which a defendant can make a colorable argument that a self-

16

incriminating statement was "compelled" despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Dickerson v. United States, 530 U.S. 428 (2000) (quoting Berkemer v. McCarty, 468 U.S. 420 (1984)). Moreover, this Court looks at the totality of the circumstances surrounding the interview, including the agents' conduct and the Defendant's capacity to resist any pressure. Simmons, 235 F.3d at 1132-33. After considering the Defendant's age, education, and knowledge of the criminal justice system, and the nature and length of the interrogation, this Court concludes that the statements made by the Defendant were voluntary and the agents' conduct and interviewing tactics did not overbear his free will and self-determination.

## V. ORDER

Based upon the foregoing, it is hereby

ORDERED that the Defendant's objections (Doc. 47) to the magistrate's report and recommendation are overruled. It is further

ORDERED that the report and recommendation (set forth orally on the record and at Doc. 44) is adopted. It is finally

ORDERED that the motion (Doc. 15) to suppress is denied.

Dated December 16, 2009.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE